608

John William BRISTOW, Plaintiff,
Appellant,

v.

SAFWAY STEEL PRODUCTS, t/a Safway Steel Scaffolds, Virginia Division of Safway Steel Products, Incorporated, Defendant and Third-Party Plaintiff, Appellee,

v.

ROBERT M. DUNVILLE AND BROS., INCORPORATED, Third-Party Defendant, Appellee.

No. 9020.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 30, 1963.

Decided Jan. 14, 1964.

William P. Hanson, Richmond, Va., for appellant (Hanson & Hanson, Richmond, Va., on brief).

Jack B. Russell, Richmond, Va., for appellee, Safway Steel Products, etc.

James C. Roberts and Ernest G. Garrett, Jr., Richmond, Va., for appellee, Robert M. Dunville and Bros., Inc. (Browder, Russell & Morris, Tucker, Mays, Moore & Reed, and May, Garrett, Miller, Newman & Compton, Richmond, Va., on brief).

Before SOBELOFF, Chief Judge, BRYAN, Circuit Judge, and THOMSEN, District Judge.

ALBERT V. BRYAN, Circuit Judge:

The Workmen's Compensation Act of Virginia, on acceptance of its provisions,

denies an injured employee the right to recover damages which he may have "against any other party" unless the latter is one not "employed in the work" in which the employer of the injured employee is engaged.[1] See Doane v. E. I. Du Pont De Nemours & Co., 209 F.2d 921 (4 Cir. 1954). The question presently is whether John William Bristow, an employee of Robert M. Dunville and Bros., Incorporated, is foreclosed by the Act from recovering of Safway Steel Products for injuries sustained, assertedly due to Safway's negligence.

Holding that the Act barred Bristow's action against Safway, because Safway was a subcontractor engaged in the work of Dunville as a general contractor, the District Court granted defendants' motion for summary judgment. This finding, we conclude on this appeal of Bristow, was error. The facts, uncontested, demonstrate that Safway was an "other party" under the Act and a "stranger" to the work of Bristow's employer, so not immune from direct liability to Bristow.

Dunville contracted with Richmond Food Stores, Incorporated for the installation of a refrigeration system. The agreement required Dunville to furnish all the necessary materials and labor for the job. As it had no scaffolding of its own, Dunville arranged to rent the staging from Safway, and in calculating its bid for the Richmond Food construction, Dunville included the rental cost. The formal lease between Safway and Dunville did not require Safway to do anything more than deliver the unassembled scaffolding to Dunville at the construction site. Accordingly, the equipment was placed at the Richmond Food plant by Safway, but no employee of Safway remained there or had anything to do with the erection of the scaffold. It was put up by Dunville employees exclusively.

While working on this scaffold as an employee of Dunville, Bristow was injured when it turned over. He brought suit against Safway upon the allegation that the scaffolding was defective and not suited for its intended purpose. Safway impleaded Dunville in the case to enforce a covenant of the lease that Dunville would save Safway harmless from any claim arising from the "erection and maintenance, use or possession" of the scaffold.

An employee is presumed to have accepted the Workmen's Compensation Act,[2] and an application for its benefits will "exclude all other rights and remedies of such employee * * * at common law or otherwise, on account of such injury * * *."[3] Bristow actually received compensation payments from Dunville. Acceptance of the Act "shall operate as an assignment to the employer of any right to recover damages which the injured employee * * * may have against *any other party* for such injury * * *."[4] (Accent ours.) The action may be brought in the name of the employee, and any excess recovered beyond the compensation and expenses of suit paid by the employer is given the employee.

Primarily, the Act requires that every employer shall pay the stipulated compensation to any of his employees who have suffered injury or death in the course of his employment.[5] Additionally, in separate sections[6] it provides that when an owner undertakes to perform or execute any work which is a part of his "trade, business or occupation", he "shall be liable to pay to any workman *employed in the work* any compensation under this Act *which he would have been liable to pay if the workman had been immediately employed by him*". (Accent ours.) Moreover, every person contracting to perform or execute any work for another person which is not a part of the trade, business or occupation of such other person, incurs a similar liability.

---

1. Va.Code of 1950, §§ 65–20,–27,–37; § 65–38 (Supp.1962).

2. Va.Code of 1950, § 65–20.

3. § 65–37.

4. § 65–38 (Supp.1962).

5. § 65–20.

6. §§ 65–26, –27 and –28.

Finally, a like liability is imposed upon every subcontractor of an owner, contractor or other subcontractor.

Thus every contractor and subcontractor, as well as the owner in the circumstances stated, performing or executing any work may become liable for payment of compensation to any workman "employed in [that] work" upon his injury or death therein. On payment or provision for payment, such contractor, subcontractor or owner is thereby rendered immune to suit by the injured employee for damages. In this way the responsibility of the owner, contractor or subcontractor to an injured worker or other person, as well as the injured party's rights against them or any other person, are measured first by reference to the relation of each to the work-project. The aim of the Act is that the economic burden of all parties arising from personal injuries incident to the undertaking be carried by, and confined to, the project.

■ From this design of the statute, it has been consistently held that "any other party"—against whom the employee has a right of action—can only be one who is not engaged in the execution or performance of the work. Doane v. E. I. Du Pont De Nemours & Co., supra, 4 Civ., 209 F.2d 921; Sears, Roebuck & Co. v. Wallace, 172 F.2d 802 (4 Cir. 1949); Kramer v. Kramer, 199 Va. 409, 100 S.E.2d 37, 44 (1957). Put another way, "any other party" is one not required to pay, or not entitled to receive, compensation under the Act.

This court has recognized and applied Virginia's concept of her Workmen's Compensation Act, saying:

"It is manifest from these holdings [State decisions] that an employee covered by the Act has no right of action against another party for injuries received while engaged in the business of his employer unless that other party is a stranger to the business.

\* \* \* \* \* \*

"The purpose of the Virginia statute as interpreted by its highest court is to limit the recovery of all persons engaged in the business under consideration to compensation under the act, and to deny an injured person the right of recovery against any other person unless he be a stranger to the business." Judge Soper in Doane v. E. I. Du Pont De Nemours & Co., supra, 209 F.2d 921, 924, 926.

■ Our judgment, to repeat, is that Safway was an "other party" not engaged in "the execution or performance" of, and not "employed in", the work embraced within the contract between Richmond Food and Dunville. Safway simply gave Dunville permission to use its scaffolding, which remained the property of Safway. This did not convert Safway into a participant in the work. It was the equivalent of renting or selling a tool, such as a hammer, for use by Dunville in its work. In such a transaction neither the lessor nor vendor would be an actor in the execution of the refrigeration contract; neither would be required to provide compensation insurance for the protection of himself or a worker. In this view we do not reach the question, discussed by counsel, and therefore considered by the trial court, of the status of one furnishing materials to the job-site for incorporation in the structure. Compare Garrett v. Tubular Products, Inc., 176 F.Supp. 101 (D.C.E.D.Va.1959).

But appellees Safway and Dunville, to sustain their insistence that Safway was not a stranger to the work, cite us to these Virginia decisions especially: Rea v. Ford, 198 Va. 712, 96 S.E.2d 92 (1957); Williams v. E. T. Gresham Co., 201 Va. 457, 111 S.E.2d 498 (1959); Floyd v. Mitchell, 203 Va. 269, 123 S.E. 2d 369 (1962); Lucas v. Biller, 204 Va. 309, 130 S.E.2d 582 (1963). We find nothing in them, opposed to the position we have expressed.

In Rea v. Ford, supra, 198 Va. 712, 96 S.E.2d 92, Ford rented his crane with operator and helper to the general contractor to hoist steel trusses into place on the construction job. An employee of the general contractor was killed

through the alleged negligence of Ford in furnishing an insecure crane and in its operation. The Act barred recovery at common law for the death, because Ford not only furnished the crane but operated the machine, and was thus occupied in the work of the contractor. The Court refused to distinguish between the supplying of the crane and its operation.

In Williams v. E. T. Gresham Co., supra, 201 Va. 457, 111 S.E.2d 498, the claimant was held precluded by the Act because he was personally working within the scope of his employer's undertaking, and his injury was inflicted by the defendant subcontractor who was likewise engaged.

Much stock is put by Safway and Dunville in Floyd v. Mitchell, supra, 203 Va. 269, 123 S.E.2d 369. Here the injured plaintiff's employer had contracted for delivery of its product by a trucker. The Court found that such deliveries were necessarily a part of the employer's work. Hence, when he was injured by the trucker during a step in the delivery, the Court said, the plaintiff and the defendant trucker were both within the Act.

Lucas v. Biller, supra, 204 Va. 309, 130 S.E.2d 582, involved a common law damage action by an employee against a co-employee for injuries received as she was driven home from work by the defendant co-employee. Without dispute, it appeared that their common employer had agreed to furnish transportation to the claimant employee and to pay the co-employee for undertaking the transportation. The action was held excluded by the instant statute because the driver was performing the work of the employer.

Whatever the obligation of Dunville to Safway under the lease covenant —and we intimate no view in that regard —it is not a consideration in the right of Bristow to sue Safway. The mere fact that such a suit may result ultimately in Dunville's payment of damages to Bristow, despite previous payment of compensation, cannot destroy Bristow's remedy

at common law. Any such recovery from Bristow's employer would be wholly dependent upon the terms of Dunville's voluntary stipulation, something quite apart from the statute. No agreement between Dunville and Safway, without the assent of Bristow, can expand the Act to encompass Bristow's claim.

Of course, we do not rule upon the merits of Bristow's claim against Safway; we only say the claim is not shut out by the Act. The judgment dismissing Bristow's suit must be reversed and the case remanded for trial.

Reversed and remanded.